[Civ. No. 3144. Third Appellate District.—January 31, 1927.]

## J. L. DAVIS, Respondent, v. C. MONTE et al., Appellants.

[1] APPEAL — FAILURE TO FIND ON MATERIAL ISSUES — EVIDENCE. — Error of the trial court to the prejudice of defendants in failing to find upon material issues raised by the pleadings and sustained by the evidence is reversible error.

[2] CHATTEL MORTGAGES—SALE OF CATTLE — FRAUD—PLEADING FINDINGS—EVIDENCE. — In an action in replevin by the seller and mortgagee of cattle, where the buyers and mortgagors raised the issue by cross-complaint that the sale was procured by reason of the alleged false representations of plaintiff, with intent to deceive, which defendants relied on, the trial court erred in failing to find on the issue of fraud, which was specifically alleged by the pleadings and which was sustained by the evidence.

[3] FRAUD — PLEADING — SUFFICIENCY OF ALLEGATIONS. — Fraud may not be alleged generally, but the ultimate facts constituting fraud should be alleged with reasonable certainty.

[4] ID.—EXPRESSION OF OPINION OR BELIEF—REPRESENTATIONS.—An expression of opinion or belief, if nothing more, and if so understood and intended, is not a representation of fact, and, although false, does not amount to actionable fraud.

[5] ID.—EXPRESSION OF OPINION—STATEMENT OF FACT—QUESTION FOR TRIAL COURT OR JURY.—Where there is any doubt as to whether or not representation was intended and understood as a mere expression of opinion or a statement of fact, the question is not one of law but of fact for the court or jury.

1. See 2 *Cal. Jur.* 1032.
3. See 12 Cal. Jur. 800; 12 R. C. L. 416.
4. See 12 Cal. Jur. 726; 12 R. C. L. 245.

[6] ID.—STATEMENT BASED ON ALLEGED FACTS—ACTIONABLE FRAUD.—
A statement of what might otherwise be an opinion, if based on
alleged facts, is a statement of fact and may be the basis of
actionable fraud.

[7] CHATTEL MORTGAGES—REPRESENTATIONS—STATEMENT OF OPINION—
FINDINGS.—In this action in replevin by the seller and mortgagee
of cattle, the trial court erred in not making a finding as to
whether the seller made representations, which the buyers and
mortgagors relied on, with the intent to deceive, notwithstanding
the court found that the representations were made as a statement
of opinion.

[8] ID.—RELIANCE ON REPRESENTATIONS—EVIDENCE.—In such action,
the evidence was sufficient to show that the buyers of the cattle
were induced to rely on the seller's statement as to when they
would come fresh, and his particular knowledge of them, and that
the buyer relied on the seller's opinion as to the cattle.

[9] SALES—FALSE STATEMENT OF OPINION AS TO THINGS SOLD—RESCIS-
SION.—Under certain circumstances, the seller's false statement of
opinion as to things sold may be sufficient ground for relief by
rescission.

(1) 4 **C. J.**, p. 1059, n. 99.   (2) 11 **C. J.**, p. 618, n. 12.   (3) 27
**C. J.**, p. 28, n. 50.   (4) 26 **C. J.**, p. 1080, n. 87.   (5) 27 **C. J.**, p. 74,
n. 69.   (6) 26 **C. J.**, p. 1083, n 7.   (7) 11 **C. J.**, p. 618, n. 12.   (8)
35 **Cyc.**, p. 84, n. 13.   (9) 35 **Cyc.**, p. 130, n. 89.

APPEAL from a judgment of the Superior Court of
Imperial County. M. W. Conkling, Judge. Reversed.

The facts are stated in the opinion of the court.

H. B. Stewart and Charles L. Childers for Appellants.

C. L. Brown for Respondent.

BUCK, J., *pro tem.*—Action in replevin based upon the
provisions of a chattel mortgage given by defendants to
plaintiff.

The mortgage in question was given as the sole consider-
ation for the sale by plaintiff to defendants of eighteen head
of dairy cattle, and covered not only the cattle sold, but also
eleven other head owned by the defendants. By way of
answer the defendants relied on their cross-complaint,

6.   See 12 **Cal. Jur.** 727; 12 **R. C. L.** 248.

wherein they seek to rescind and set aside the mortgage, so far as it pertains to the eleven head of cattle, upon the ground that the plaintiff procured and brought about the sale through false and fraudulent representations inducing the defendants to purchase the cattle.

The court sat with an advisory jury, as in the case of *French* v. *Freeman,* 191 Cal. 579 [217 Pac. 515], and made findings in favor of the plaintiff and against the defendants upon the cross-complaint, and entered judgment accordingly in favor of plaintiff. From this judgment defendants appeal.

[1] In substance, the point urged by the defendants is that the court erred to the prejudice of defendants in failing to find upon certain material issues raised by the pleadings and sustained by the evidence. This contention, of course, if sustained, is a valid ground for the reversal of the judgment. (*Frascona* v. *Los Angeles Ry. Corp.,* 48 Cal. App. 135 [191 Pac. 968].) And further it is not upon the special verdict of the jury, but upon the findings actually made by the court, that the judgment must stand or fall. (*Holland* v. *Kelly,* 177 Cal. 43 [169 Pac. 1000] ; *Hunceker* v. *Lutz,* 65 Cal. App. 649 [224 Pac. 1001] ; *Shooler* v. *Williamson,* 192 Cal. 472 [221 Pac. 195].)

The pleadings in regard to the misrepresentations relied upon, and which it is claimed require responsive findings, are in substance as follows:

"That on or about the 25th day of September, 1921, the defendant C. Monte met the plaintiff and plaintiff then and there showed to said defendant C. Monte the cows he proposed to sell to defendants; that at that time the plainiff urged the defendant, C. Monte to buy said cows, being certain of the cows described in plaintiff's complaint, telling said defendant that said cows were or had been picked by him, said plaintiff, from a large number of cows which then were or had recently been belonging to him for his own personal ranch or dairy herd, on account of their good quality; that at the same time and place, plaintiff represented to said defendant that he knew when each of the cows so sought to be sold by him to defendants had been bred, and falsely told the defendant C. Monte that each of the cows so sought to be sold by him, eighteen in all, with the exception of two cows which he pointed out and one

other cow which then had a calf with her, would come fresh within three to six weeks; . . . that each, all and every of said representations so made by the plaintiff to the defendant C. Monte were false and untrue, and were known to the plaintiff to be false and untrue when so made by him to said defendant, and were made with the purpose and intent to deceive and defraud the defendants and to induce them to purchase said eighteen cows from the plaintiff; that said defendant C. Monte believed said representations to be true and relied upon the same, and so believing and relying upon said representations agreed to purchase and did purchase said eighteen cows from the plaintiff.''

And furthermore: ''That one of the cows so sold by plaintiff to defendants and no more came fresh within six weeks from the time of the consummation of said transaction; that up to the time of the commencement of this action not more than four or five of said cows so sold by plaintiff to these defendants came fresh.''

· There was no denial of the allegation as to the failure of the cows to become fresh, but there were specific denials as to the other specific allegations of fraud.

Evidence was taken upon all the foregoing issues, and the following and no other special verdict was returned by the jury in regard to the specifically alleged fraud.

''Q. 1.  Did the plaintiff, Davis, in order to induce defendants to purchase the eighteen cows of Davis represent to defendants that such eighteen cows had, with a few exceptions, been so bred that they would come fresh within three to six weeks?  Answer: Yes.

''Q. 2.  Were any statements made by the plaintiff Davis to defendant Monte relative to the times when the cows would come fresh, made as statements of fact or of opinion. Answer: Opinion.''

Whereupon the court, in its findings of fact and conclusions of law on the foregoing issues of fraud, found as follows:

''The Court therefore and in accordance with the said verdict makes and causes to be filed herein its findings of fact and conclusions of law. . . .

''That the plaintiff Davis, in order to induce defendants to purchase the eighteen cows of Davis, represented to defendants that such eighteen cows had, with a few exceptions,

been so bred that they would become fresh within three to six weeks, but that said representations so made were made as a statement of opinion, and not as a statement of fact, and that the plaintiff committed no fraud in the sale of said cows.''

The rule, and the reason therefor, giving litigant the right to have findings upon the material issues raised by the pleadings, has been most clearly and forcibly enunciated by Presiding Justice Finlayson in the case of *Frascona* v. *Los Angeles Ry.*, *supra*, as follows:

''Unless findings are waived—and here, as the record shows, they were not—the trial court must give its decision in writing, i. e., must file written findings of fact. (Sec. 632, Code Civ. Proc.) The right to findings is a. substantial right, as inviolate, under the statute, as that of trial by jury under the constitution. (*Bard* v. *Kleeb,* 1 Wash. 370 [25 Pac. 467, 27 Pac. 273].) The code provision requiring written findings of fact is for the benefit of the court and the parties. To the court it gives an opportunity to place upon record, in definite written form, its view of the facts and the law of the case, and to make the case easily reviewable on appeal by exhibiting the exact grounds upon which the judgment rests. To the parties, it furnishes the means, in many instances, of having their cause reviewed without great expense. It also furnishes to the losing party a basis of his motion for a new trial; he is entitled to know the precise facts found by the court before proceeding with his motion for a new trial, in order that he may be able to point out with precision the errors of the court in matters either of fact or law. (*Bard* v. *Kleeb, supra; Savings & L. Soc.* v. *Burnett,* 106 Cal. 539 [39 Pac. 922]; *Polhemus* v. *Carpenter,* 42 Cal. 385.) 'The right to have a material issue presented by the pleadings in a cause determined by a finding of the court is one important to the parties to a suit, and the failure to make such a finding results in prejudicial error entitling the complaining suitor to reversal.' (*Huntington* v. *Vavra,* 36 Cal. App. 355 [172 Pac. 168]. See, also, *Tucker* v. *United Railroads,* 171 Cal. 704 [154 Pac. 835.]

''While it is not necessary that the findings should follow the precise language of the pleadings, it is essential that they be so drawn that the truth or falsity of every material

allegation can be demonstrated therefrom. The purpose of findings 'is to answer the questions put by the pleadings.' (*Dam* v. *Zink,* 112 Cal. 93 [44 Pac. 332].) The province of the court is to determine, not to raise, issues.''

In connection with the foregoing it must be shown, of course, that the failure on the part of the court to find upon the issue in question resulted in prejudice to the rights of the appellant. Consequently, the cases hold that it must appear that the issue failed to be found upon was a material issue, and that there was evidence in the record which would warrant a finding thereon in favor of the appellant. And it must also appear that the findings would be insufficient to support the judgment if, in addition to the findings actually made, the court had also found favorably to appellants' contentions upon the issues in question. Or, as stated in other words, in the case of *Sharp* v. *Pitman,* 166 Cal. 501, 505 [137 Pac. 234, 236 ] : ''If the findings which are made are of such a character as to dispose of issues which are sufficient to uphold the judgment, it is not a mistrial or against the law to fail or omit to make findings upon other issues, which, if made, would not invalidate the judgment.'' (*Klokke* v. *Escailler,* 124 Cal. 297 [56 Pac. 1113]; *Buell* v. *Brown,* 131 Cal. 158 [63 Pac. 167]; *Sharp* v. *Pitman,* 166 Cal. 501 [137 Pac. 234]; *Colver* v. *Scarborough Co.,* 73 Cal. App. 455 [238 Pac. 1104, at p. 1110]; *Lincoln* v. *Hoggard,* 66 Cal. App. 196 [225 Pac. 770].)

[2] In the case at bar, the issues raised by the pleadings, and upon which there are no findings, are based upon the allegations of the cross-complaint that the statements, both of fact and opinion, made by plaintiff were made with intent to deceive, and as a matter of fact were relied upon by the defendants and did induce them to make the purchase which was the consideration for the chattel mortgage. One of these representations particularly alleged to have been relied upon by defendants was the representation that plaintiff knew when each of the cows was bred.

[3] Fraud may not be alleged generally, but the ultimate facts constituting fraud should be specifically alleged with reasonable certainty. (*Kent* v. *Snyder,* 30 Cal. 667, 674; 12 Cal. Jur., pp. 800–816.)

Consequently, the finding omitted would have been upon a material issue.

[4] The next question which arises is whether or not the finding actually made in regard to the expressions of opinion would be sufficient to sustain the judgment, even though a finding favorable to defendants' contention were made on the issues referred to above touching plaintiff's statement that he knew when the cows were bred and that they would come fresh in from three to six weeks, and were made with intent to deceive, and did deceive and induce defendants to make a purchase.

As stated in the case of *French* v. *Freeman,* 191 Cal. 579, at page 585 [217 Pac. 515, 517], quoting from *Stockton* v. *Hind,* 51 Cal. App. 131 [196 Pac. 122]: "It is conceded that the general rule is that an expression of opinion or belief, if nothing more, and if so understood and intended, is not a representation of fact, and, although false, does not amount to actionable fraud. Ordinarily a person has no right to rely upon such statements, and if he does so rely, he cannot treat them as fraudulent, either for the purpose of maintaining an action in damages for deceit, or for the purpose of rescinding the contract. [5] Where there is any doubt as to whether or not a representation was intended and understood as a mere expression of opinion or a statement of fact, the question is one not of law but of fact for the court or jury."

[6] From the above it will be noted that the court held that the party to whom the alleged expression of opinion was made must have understood it to have been a mere opinion, and, so understanding it, should not be permitted to charge the other party with intent to deceive or to claim that he himself was deceived. In the case at bar, however, it will be noted that the court goes no further than to find that the "said representations so made were *made* as the statement of opinion." But the court does not find they were received or *understood* by the defendants as a statement of opinion. Furthermore, if the court had found in favor of defendants' allegation that the plaintiff stated as a *fact* "that he knew when each of said cows was bred" when he stated they would come fresh in three to six weeks, and had further found in response to plaintiff's allegation that such statements were believed by defendants and relied upon by them, and were made by plaintiff to deceive defendants, and did deceive them, then it is evident the case

would be brought within the rule stated in the case of *French* v. *Freeman, supra,* as follows: "And it is well established that a statement of what might otherwise be an opinion, if based on alleged facts, is a statement of fact and not a statement merely of an opinion. (*Tracy* v. *Smith,* 175 Cal. 161, 165 [165 Pac. 535]; *Brandt* v. *Krogh,* 14 Cal. App. 39, 49 [111 Pac. 275]; *Winkler* v. *Jerrue,* 20 Cal. App. 555, 560 [129 Pac. 804].)"

The same rule is stated more succinctly in the case of *Henry* v. *Continental Bldg. etc. Assn.,* 156 Cal. 667, at page 680 [105 Pac. 960, 965], as follows: "The rule that mere expressions of opinion cannot constitute actionable fraud is, no doubt, subject to some qualification. A party inducing another to contract in reliance upon estimates or opinions professedly based upon alleged facts known to the party stating them to be nonexistent will not be permitted to escape responsibility by the plea that he was merely declaring his opinion. A statement that the history of the defendant showed that its stock would mature in seven years is clearly a statement of fact, and, if falsely made and relied on, would furnish ground for relief to the party misled by it."

Also, the same rule as laid down in *Haserot* v. *Keller,* 67 Cal. App. 659, at page 670 [228 Pac. 383, 388], would seem to preclude a general finding for plaintiff in this case, if the court had made a finding favorable to defendants' allegation that the plaintiff, with intent to defraud, represented to defendant that he, plaintiff, knew when each of the cows had been bred when he stated that they would come fresh in six weeks, and that the defendants believed and relied upon said statements and were thereby induced to make the purchase. The court states the rule as follows: "When one of the parties possesses, or assumes to possess, superior knowledge or special information regarding the subject matter of the representation, and the other party is so situated that he may reasonably rely upon such supposed superior knowledge or special information, a representation made by the party possessing or assuming to possess such knowledge or information, though it might be regarded as but the expression of an opinion if made by any other person, is not excused if it be false."

The rule stated in the foregoing case is also applied in the recent case of *J. B. Cott Co.* v. *Freitas,* 76 Cal. App. 278 [244 Pac. 916, at page 919].

See, also, *Palladine* v. *Imperial Valley F. L. Assn.,* 65 Cal. App. 727, at page 737 [225 Pac. 291, 295], where it is held that "an opinion may be actionable if the party expressing the opinion possesses superior knowledge such as would justify the conclusion that his opinion carries with it the implied assertion that he knows the facts which justify it, if he knows that he does not honestly entertain the opinion, because it is contrary to the facts." In the case at bar the charge is that there was not merely an implied but an express assertion on the part of the plaintiff that he knew the basic and potent fact as to when the cows were actually bred.

In the recent case of *Beckley* v. *Archer,* 74 Cal. App. 589 [241 Pac. 422], also from the same court of appeal, it was held that a representation by a seller of dairy cows to a purchaser that all the cows were with calf and would calve within six weeks was a statement such that the jury were justified in finding was merely a statement of opinion. That was a case where fraud was relied upon as a tort resulting in damages giving rise to a suit at law where the jury returned a general verdict against the party relying upon the alleged fraud, and on appeal the verdict was upheld for the reason that, unlike, as alleged in the case at bar, there was nothing in the testimony of either party which shows "or which may reasonably be said to tend to show that his opinion was expressed with a design to deceive the defendants as to the matter." And furthermore, in order to sustain the verdict of the jury, the court indicated that there was evidence which would justify a finding that they did not rely upon the statement of the seller, but relied "rather upon their own judgment regarding that matter, and the jury, it may be assumed, so viewed that phase of the case." And the court accordingly upheld the verdict of the jury upon the ground that "it is elementary that expressions of opinion honestly made are not actionable. (*Phelps* v. *Grady,* 168 Cal. 73, 77 [141 Pac. 926].)"

[7] In the case at bar it will be noted that material allegations were made which, if found in favor of the defendants herein, would have led to the conclusion that the

"expressions of opinion" herein were made not "honestly," but dishonestly.

The representation that the cows would calve in from three to six weeks was manifestly an opinion, just as the bare statement that they had been so bred as to produce that result would be an opinion. But the question put in issue by the pleadings was not merely whether the statement was an opinion, but whether or not it was made to deceive and did deceive; and, furthermore, that question was presented in accordance with law, not only by general allegations to the foregoing effect, but also by special averment that plaintiff, by his own false statement, to wit, that he knew when the cows were bred, assumed to possess special information, which also led the defendant to believe that he, the plaintiff, did, as a matter of fact, possess special and important information regarding the subject matter of the representation.

It would therefore appear that all the pleadings in the case brought the case within the rules touching representations of opinion laid down in the foregoing authorities. In accordance with the rule requiring findings, the court should have found to the effect that the plaintiff either did or did not state that he knew when the cows were bred, and also have found whether or not the plaintiff intended to deceive the defendant, and whether the defendant was or was not misled and deceived to his injury.

[8] The next question that necessarily arises is whether or not there was evidence in the record which, if believed by the court, could have been the basis of a finding of fact that the plaintiff did represent that he knew when all the cows had been bred, and that this statement, and the statement that the cows would come fresh in three to six weeks, were made with intent to deceive, and were relied upon by defendants and induced them to make the purchase. The evidence, without conflict, shows that both parties understood that defendants were in a situation where it was important and necessary to them that they should be able to obtain milk as early as possible from the cows. There is also the evidence of two witnesses to the effect that when the plaintiff told defendant that the cows would come fresh within three to six weeks, he showed the defendant a book which he had in his hand, which showed when the cows were

actually bred to the bull, thereby implying that as the result of that breeding so indicated in the book they would "come fresh in from three to six weeks," all of which was relied upon and believed by the defendant, whose testimony was as follows:

"And I said, 'When do you breed cows,' and he says— he pulled a little book just about like this (indicating) and he had the breed in there of every cow. He had the whole 18 cows and he had a different date.

"Q. Did he show you that book? A. He show me that book and he had it right in his hand, a little book.

"Q. Did you see certain names of cows and numbers of cows in the book? A. Some have cow 4, some have cow different numbers, you know, and one cow fresh certain time and he said the last cows, the eighteen cows was going to come fresh from three to six weeks, the last one wouldn't stay but six weeks, and if she didn't come fresh at that time he make good. That is the proposition he told me the first time."

And the witness Armstrong likewise testified that the plaintiff stated, in answer to defendant's question. "When do these cows come fresh," that "These cows will come fresh from three to six weeks." And also that he recalled seeing the plaintiff take a book out of his pocket and show Monte a record that he had in regard to these cows. The witness said: "He took a book out of his pocket and says, 'Now, Monte, I have a record of these cows. I have the breed of them. This one comes fresh such and such a time, and this one comes fresh such and such a time, and he went down the line about the whole eighteen cows, when they would come fresh. I didn't see what was in the book. I didn't look at the book."

This testimony was in substance denied by the plaintiff. But, if believed by the court, it would warrant a finding of fact to the effect that defendant was by the statement of plaintiff induced to rely upon plaintiff's special and particular knowledge as to the particular and potent fact of the actual breeding of the cows at a particular time, and at such a particular time as would warrant the defendants in believing and relying upon the opinion expressed by plaintiff that they would come fresh within from three to six weeks.

And, further, as regards the testimony touching the

falsity of the foregoing statements, if they were made, plaintiff himself is the best witness when he testified as follows:

"Q. Mr. Davis, did you know at all when these cows would become fresh, the exact dates? A. No, sir; I could not tell.

"Q. Did you have any means of knowing? A. Not a bit in the world except from the appearance of the cows.

"Q. You knew no more about it than Mr. Monte did? A. Not a bit.

"Q. You were on equal terms with him; is that right? A. Yes, sir.

"Q. So far as the cows coming fresh was concerned, you had no better knowledge than he did? A. Not a bit, except I knew the males had been running with the females because I had seen the cattle at different times and knew they were kept with them.

"Q. You didn't have charge of these cattle personally before you sold them to Monte? A. No."

As regards all of the foregoing testimony on behalf of the defendants, if it was disbelieved by the court, as it might very well have been, a finding to the contrary should have been made. But there being no such finding, it becomes apparent that the defendants were deprived of "a substantial right as inviolate under the statute as trial by jury under the constitution."

[9] It would also seem that in order to sustain this judgment we would be obliged to ignore an established and wholesome principle of equity that under certain circumstances the false statement of an opinion may be a sufficient ground for relief by rescission.

The judgment is reversed.

Finch, P. J., and Plummer, J., concurred.